UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JAMES R. DAHL and MELISSA DAHL, | |
| Plaintiffs, | |
| v. | Case No. 13-13599 |
| FIRST FRANKLIN LOAN SERVICES, BANK OF AMERICA, N.A., TROTT & TROTT, P.C., and SELECT PORTFOLIO SERVICING INC., | Hon. Patrick J. Duggan |
| Defendants. | |

## <u>OPINION AND ORDER</u>

This is a consumer lending action involving Plaintiffs' repeated attempts to modify a residential loan. Plaintiffs James and Melissa Dahl instituted this action against Defendants First Franklin Loan Services ("First Franklin"), Bank of America, N.A. ("BANA"), and Trott & Trott, P.C. ("Trott"), in state court seeking monetary damages in connection with alleged improprieties in the servicing of their residential mortgage. Defendants removed the action to this Court based on federal question and supplemental jurisdiction. BANA, as successor in interest to Home Loan Services, Inc. d/b/a First Franklin Loan Services, and Trott

subsequently filed separate dispositive motions seeking dismissal of the entire action. Both motions have been fully briefed.

Having determined that oral argument would not significantly aid the decisional process, the Court dispensed with oral argument pursuant to Local Rule 7.1(f)(2). For the reasons stated herein, the Court will grant Trott's Motion and will grant in part and deny in part BANA's motion.

## I.    BACKGROUND

**A.    Factual Background**

On February 13, 2006, Plaintiffs accepted a $124,300 loan from First Franklin Bank, and, in exchange, executed a promissory note secured by a mortgage on real property commonly known as 10414 Calkins Road, Swartz Creek, Michigan (hereinafter the "Property"). (Mortgage, Trott's Mot. Ex. B; Compl. ¶ 12.) The Mortgage, executed in favor of MERS, "solely as a nominee for Lender and Lender's successors and assigns[,]" designates MERS as "the mortgagee under this Security Instrument." (Mortgage, Trott's Mot. Ex. B.) On November 17, 2008, MERS assigned the mortgage to non-party Deutsche Bank National Trust Company, as Trustee for First Franklin Mortgage Loan Trust 2006-

FF7, Mortgage Pass-Through Certificates, Series 2006-FF7 ("DBNTC").[1]

(Assignment, Trott's Mot. Ex. C.)

Plaintiffs defaulted on their loan obligations under the Note and Mortgage by failing to remit timely payment. Upon default, DBNTC commenced a foreclosure by advertisement pursuant to Michigan's statutory scheme. On February 27, 2009, Trott sent a letter to Plaintiffs providing:

> This office represents Home Loan Services, Inc., which is the creditor to which your mortgage debt is owed or the servicing agent for the creditor to which the debt is owed. The creditor has referred the matter to this office with instructions to commence foreclosure proceedings against the property. . . .

(1/27/09 Letter, Trott's Mot. Ex. D.)

The foreclosure proceedings were apparently adjourned while Plaintiffs endeavored to secure a loan modification from First Franklin. According to Plaintiffs' Complaint, "[o]n or about March 22, 2010, Plaintiffs were offered a Loan Modification Trial Period Plan." (Compl. ¶ 15.) Plaintiffs returned the documents requested by First Franklin and "their Trial Period Mortgage Payment Coupons were in the amount of $813.97 with the three trial payments scheduled for" May, June, and July of 2010. (*Id.*) Despite making the three payments, Plaintiffs "were left in the dark and not advised of further details about their mortgage payments." (*Id.* ¶ 21.) Then, on August 8, 2010, Plaintiffs received

---

[1] In their Complaint, Plaintiffs allege that the assignment to DBNTC occurred in May of 2006. (Compl. ¶ 13.)

3

notice from First Franklin that a foreclosure date had been set for September 29, 2010.  (*Id.* ¶ 22.)  At the end of August 2010, First Franklin sent a letter to Plaintiffs indicating that they needed more documentation to complete a loan modification.  (*Id.* ¶ 26.)

"[O]n or about September 30, 2010[,]" while loan modification discussions were underway between Plaintiffs and First Franklin, "Plaintiffs received a Welcome Letter from [BANA]" indicating that the servicing rights to Plaintiffs' loan had been transferred form First Franklin to BANA.  (*Id.* ¶ 27.)  At the time BANA obtained the account, Plaintiffs were in default.  (*Id.* ¶ 30.)  Although Plaintiffs had already made three trial payments to First Franklin, they were informed that they would have to make three trial payments to BANA.  (*Id.* ¶ 31.)  Plaintiffs made these payments and were subsequently informed that "they were still participating in a Home Affordable Modification Trial Period Plan and could continue paying the trial modification payment[.]"[2]  (*Id.* ¶¶ 32-33.)  Plaintiffs were never informed whether or not the loan modification became permanent, but were

_____

[2] Subsequently, a customer service representative named Amadis Nicholas informed Plaintiffs that "his file showed nothing regarding Plaintiffs entering into" this type of trial loan modification.  (Compl. ¶ 58.)  However, "every monthly statement received by Plaintiffs stated: 'You are currently participating in a Home Affordable Modification Trial Period Plan.'"  (*Id.* ¶ 59 (emphasis removed).)  Upon Mr. Nicholas's request, Plaintiffs sent him a copy of a statement containing this language.

directed to speak with various representatives at BANA, the last of whom repeatedly told Plaintiffs that the status was "pending." (*Id.* ¶¶ 35, 38, 40.)

Despite being continually told that the loan modification was pending, BANA sent Plaintiffs a letter dated November 6, 2012 and enclosed a check in the amount of $1,440.73, indicating that it was "returning partial payments[.]" (*Id.* ¶ 52.) BANA refused to accept Plaintiffs' next payment. (*Id.* ¶ 53.) Soon thereafter, a woman showed up at Plaintiffs' home, handed Ms. Dahl a notice to call BANA, and proceeded to photograph the home. (*Id.* ¶ 55.)

Ultimately, despite representations that the foreclosure sale would be postponed, the Property was sold at a sheriff's sale on January 30, 2013.[3] (*Id.* ¶ 61.) In April of 2013, Plaintiffs received a letter from Trott, notifying them that the sheriff's sale had been rescinded. (*Id.* ¶ 69.) A copy of the affidavit expunging the sheriff's deed, which was recorded with the Genesee County Register of Deeds on May 2, 2013, was included with the letter. (*Id.*; Aff., BANA's Mot. Ex. E.) The following month, Plaintiff received a letter from BANA "notifying Plaintiffs" of its "intent to accelerate and foreclose[]" the Property. (Compl. ¶ 71.) The letter indicated that foreclosure could be avoided if Plaintiffs remitted in excess of $60,000 to BANA by June 23, 2013. (*Id.*) Plaintiffs were confused by this letter, as the affidavit expunging the sheriff's deed provided that the parties "have agreed

_____

[3] BANA indicates that non-party DBNTC commenced the foreclosure by advertisement proceedings (as Trustee for First Franklin). (BANA's Br. 2.)

5

to modify the terms of [the] mortgage[.]"[4]  (*Id.* ¶ 69.)

As a result of the affidavit expunging the deed issued at the sheriff's sale, Plaintiffs' mortgage remains in full force and effect.  Throughout the course of this litigation, Plaintiffs have been attempting to secure a permanent loan modification, which has been complicated by the transferring of servicing rights from BANA to Select Portfolio Servicing, Inc. at some point during the past year.[5]

## B.   Procedural History

Plaintiffs filed an eight-count complaint in the Circuit Court for the County of Genesee on July 11, 2013.[6]  The removal petition indicates that BANA received the state court pleadings on July 22, 2013.  The action was timely removed to this Court on August 21, 2013 pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446.[7]  (ECF No. 1.)

---

[4] BANA characterizes this agreement as "a tentative agreement to modify the loan[.]"  (BANA's Br. 3.)

[5] Plaintiffs' Amended Complaint indicates that the servicing rights were transferred on or about December 13, 2014.  (Am. Compl. ¶ 83.) This Opinion and Order predates December 13, 2014.  As such, the Court infers that the year of the servicing transfer should read 2013.

[6] Case No. 13-100783-CZ.

[7] In BANA's Notice of Filing of Removal, filed with the state court, BANA indicates that the case was removed pursuant to 28 U.S.C. § 1332, the statute governing diversity jurisdiction.  The Court presumes that this was an oversight on the part of counsel.

Trott filed an answer to Plaintiff's Complaint on August 28, 2013.  (ECF No. 4.)  On September 9, 2013, the Court conducted a status conference.  The parties apprised the Court that loan modification discussions were ongoing and indicated that they would return for a second conference on December 9, 2013.

BANA filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on October 1, 2013.  (ECF No. 8.)  Plaintiff responded to this motion on November 1, 2013 and BANA replied on November 22, 2013.  (ECF Nos. 13, 16.)

On October 8, 2013, Trott filed a "Motion for Summary Judgment/Dismissal."  (ECF No. 10.)  Despite the title, it appears as though Trott's Motion is a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  As with BANA's Motion, Trott's Motion has been fully briefed. (ECF Nos. 12, 14.)

On December 9, 2013, the parties returned for a second scheduling conference and once again indicated that loan modification discussions were ongoing.[8]  Due to the possibility of the parties working out a settlement and dismissing the action, the Court deferred rendering a decision on the pending motions.  Status conferences set for the months of February, April, June, and July were postponed due to continued negotiations between the parties.  Finally, on September 10, 2014, one year and one day after the first status conference, the

---

[8] BANA's moving papers confirm that "the parties [continued to engage] in the process of . . . a possible loan modification[.]"  (Def. BANA's Br. 1.)

7

parties returned for a third status conference.  At this last conference, BANA

informed the Court that it was no longer the servicer of Plaintiffs' loan and that any

loan modification would have to be approved by the new servicer.  Plaintiffs

requested an opportunity to amend their Complaint to add the new loan servicer

but did not ask to amend the pleadings as to any of the named defendants.  The

Court granted Plaintiffs' request and instructed counsel to file an amended

complaint to add the new servicer within fourteen days.  The Court further

informed the parties that it would decide the pending motions based on the

allegations in the original complaint.  Because counsel did not renew the request to

add DBNTC as a party during the last status conference, the Court will not address

the requests made by Plaintiffs in responding to the pending motions.

Plaintiffs filed a First Amended Complaint on September 24, 2014, adding

their current loan servicer, Select Portfolio Servicing, Inc. ("SPS"), as a defendant,

and adding an additional count for breach of contract against it.  (ECF No. 18.)

**C.    Plaintiffs' Complaint**

Plaintiffs' Complaint contains the following causes of action:

Count I – Violation of Michigan Compiled Laws § 600.3205a (against
          BANA only);

Count II – Violation of Michigan Compiled Laws § 600.3204(4) (against
           BANA only);

Count III – Promissory Estoppel (against BANA only);

8

Count IV – Violation of the Michigan Regulation of Collection Practices
   Act, Michigan Compiled Laws § 445.251 *et seq.* (against BANA
   and Trott);

Count V – Violation of the Fair Debt Collection Practices Act, 15 U.S.C. §
   1692 *et seq.* (against BANA and Trott);[9]

Count VI – Intentional Infliction of Emotional Distress (against all
   Defendants); [10]

Count VII – Negligence (against BANA and First Franklin);[11] and

Count VIII – Fraud/Misrepresentation (against BANA and First Franklin).[12]

In responding to BANA's Motion to dismiss, Plaintiffs have agreed that that
Counts I-III and VII should be dismissed.  (Pls.' Resp. to BANA 15, 20.)

## II. GOVERNING LEGAL STANDARDS

Federal courts review motions for judgment on the pleadings brought
pursuant to Federal Rule of Civil Procedure 12(c) using the standards applicable to
motions filed under Rule 12(b)(6).  *Wee Care Child Ctr., Inc. v. Lumpkin*, 680 F.3d
841, 846 (6th Cir. 2012).  Though litigants employ these procedural mechanisms at
different stages of the proceedings, the purpose of both types of motions is to test
the legal sufficiency of a plaintiff's case.  Thus, as with Rule 12(b)(6) motions, a

---

[9] This count is erroneously labeled as Count I.

[10] This count is erroneously labeled as Count I.

[11] This count is erroneously labeled as Count III.

[12] This count is erroneously labeled as Count IV.

Rule 12(c) motion allows a court to make an assessment as to whether a plaintiff's pleadings have stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). As articulated by the Supreme Court of the United States, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 570, 127 S. Ct. 1955, 1974 (2007)). This facial plausibility standard requires claimants to put forth "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the requisite elements of their claims. *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1965. Even though a complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (citation omitted).

While courts are required to accept the factual allegations in a complaint as true, *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965, the presumption of truth does not apply to a claimant's legal conclusions, *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Therefore, to survive a motion to dismiss, a plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters*, 502

10

F.3d at 548 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65) (internal citations and quotations omitted).

In addition to evaluating the sufficiency of the factual allegations in the complaint itself, courts may consider any exhibits attached to the complaint, matters of public record, and exhibits attached to a defendant's 12(b)(6) motion, provided that the latter are referred to in the complaint and are central to the claims therein. *Rondigo, L.L.C. v. Tsp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011) (citation and alteration omitted); *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

## III.   ANALYSIS

Although Plaintiffs' Complaint contains eight separate counts, Plaintiffs have agreed to dismiss four of them.  The four remaining counts are: Count IV – Violation of the Michigan Regulation of Collection Practices Act, Michigan Compiled Laws § 445.251 *et seq.*; Count V – Violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; Count VI – Intentional Infliction of Emotional Distress; and Count VIII – Fraud.  Each of these counts is pleaded against BANA and all but the fraud count (Count VIII) are pleaded against Trott.  The Court addresses the statutes regulating debt collectors and debt collection against Defendants BANA and Trott separately before proceeding to the remaining counts.

11

A.    **Counts IV and V**

*1.     BANA*

In Count V, Plaintiffs allege that BANA violated the FDCPA by using false, misleading, or unfair methods to collect a debt; communicating or threatening to communicate credit information which is known or should be known to be false; using false representations or deceptive means to collect or attempt to collect a debt; failing to cease collection of a disputed debt; and failing to send a proper and accurate debt validation notice.  (Compl. ¶¶ 109-10.)  BANA's main contention in support of dismissal is that it is not a "debt collector" within the meaning of the FDCPA.  (BANA's Br. 11-12.)  If BANA is correct, then Plaintiffs have neither a claim nor remedy, since the FDCPA, by its very terms, only applies to debt collectors.  *See, e.g.*, *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 457 (6th Cir. 2013).  Plaintiffs bear the burden of establishing that BANA is a debt collector.  *See, e.g.*, *Golliday v. Chase Home Fin., L.L.C.*, 761 F. Supp. 2d 629, 635 (W.D. Mich. 2011).

Under the FDCPA, a "debt collector" is defined, in pertinent part, as:

[A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . The term does not include –

. . .

12

(F) any person collecting or attempting to collect any debt owed or
due or asserted to be owed or due another to the extent such activity . .
. concerns a debt which was not in default at the time it was obtained
by such person[.]

15 U.S.C. § 1692a(6)(F)(iii).

Examining the statutory language quoted above – language BANA failed to
reference in its moving papers – the Court is hard-pressed to discern how BANA
does not fit the statutory definition of a "debt collector."  Plaintiffs have alleged
(and BANA has conceded) that BANA serviced Plaintiffs' loan, thereby making
the alleged debt "due another" under the first sentence of § 1692a(6).  The statute
then provides a series of exclusions, which, if triggered, remove a person or entity
from the statutory definition of a "debt collector."  The exclusion provided in §
1692a(6)(F)(iii) is relevant here.

As the United States Court of Appeals for the Sixth Circuit has observed,
"[a]lthough there is no statutory definition of 'loan servicer' under the Act, a loan
servicer will become a debt collector under § 1692a(6)(F)(iii) if the debt was in
default or treated as such when it was acquired."  *Bridge v. Ocwen Fed. Bank,
F.S.B.*, 681 F.3d 355, 360 n.4 (6th Cir. 2012).  Because a loan servicer such as
BANA may be properly considered a "creditor or debt collector . . . depending on
whether the debt was assigned for servicing before the default or alleged default
occurred[,]" *id.* at 359 (citations omitted), BANA's contention (raised for the first
time in its Reply Brief) that the FDCPA does not apply because "the only

13

allegations directed at BANA involve the servicing of the loan, attempts to modify the loan, and the foreclosure sale that was ultimately set aside[,]" (BANA's Reply 4), is not well-taken. Indeed, the argument strikes the Court as disingenuous given that mortgage foreclosures and other activities taken in relation to a debt with a purpose to obtain payment thereof constitute debt collection under the FDCPA. *Glazer*, 704 F.3d at 459 (holding that "mortgage foreclosure is debt collection under the Act[]"); *id.* at 461 ("[I]f a purpose of an activity taken in relation to a debt is to 'obtain payment' of the debt, the activity is properly considered debt collection.").

Plaintiffs allege, and BANA does not refute, that BANA obtained the servicing rights after Plaintiffs had already defaulted on their obligations under the Note and Mortgage. (*See, e.g.*, Compl. ¶ 30.) Further, Plaintiffs allege that BANA made efforts to collect payments toward the underlying debt. Specifically, upon taking over the servicing of Plaintiffs' loan, BANA asked Plaintiffs to make three trial payments under a proposed loan modification. (*Id.* ¶¶ 31-32.) Further, in a letter dated May 14, 2013, BANA informed Plaintiffs of its intent to accelerate the loan and foreclose the Property. (*Id.* ¶ 71.) "This letter requested payment of $60,593.07 by June 23, 2013 to cure the alleged default." (*Id.*) These payments clearly constitute activities taken in relation to a debt to obtain payment of the debt and they therefore constitute debt collection activities.

14

Plaintiffs have adequately alleged that BANA is a "debt collector" within the meaning of the FDCPA.  BANA has not challenged the sufficiency of Plaintiffs' allegations as they relate the substantive provisions of the FDCPA.  *Clark v. Lender Processing Servs.*, 562 F. App'x 460, 465-66 (6th Cir. 2014) ("To state a claim under the FDCPA, a plaintiff must show that a defendant violated one of the substantive provisions of the FDCPA while engaging in debt collection activity.") (citation omitted).  As such, the Court concludes that Plaintiffs' allegations suffice to state a claim against BANA under the FDCPA.

Further, given the similarities between the allegations regarding the purported FDCPA violations and those pertinent to Plaintiffs' claims pursuant to the Michigan Regulation of Collection Practices Act, the Court concludes that Plaintiffs have stated a viable claim against BANA in Count IV of their Complaint. *Cf. Lovelace v. Stephens & Michaels Assocs.*, No. 07-10956, 2007 U.S. Dist. LEXIS 83281, at *5 (E.D. Mich. Nov. 9, 2007) (Cohn, J.) ("Plaintiff also makes claims under the Michigan Collection Practices Act[;] these simply duplicate his claims under the FDCPA and need not be addressed separately.").

### 2.    *Trott*

#### a.    *Count IV – Michigan Regulation of Collection Practices Act*

Although Plaintiffs' Complaint indicates that the Michigan Regulation of Collection Practices Act count is brought against BANA and Trott, paragraph 106

15

limits the alleged violation to BANA.  (Compl. ¶ 106 ("[BANA] violated the

Michigan Collection Practices Act, MCL §445.251, et seq.[]").).)[13]  There are no

allegations that Trott engaged in any conduct prohibited by the act and no facts to

support the claim against Trott.  The lack of any allegations permitting this Court

to reasonably infer that Trott violated the statute precludes Plaintiffs from stating a

viable claim.  Accordingly, the Court dismisses Count IV against Trott with

prejudice.

        *b.*     *Count V – FDCPA*

     Similar to the state law claim, Plaintiffs' FDCPA claim against Trott lacks

the requisite factual enhancement to state a claim that is plausible on its face.

Plaintiffs' Complaint alleges that "Trott sent Plaintiffs several collection letters

regarding the foreclosure sale dates of the subject property, including letters dated

October 11, 2012, November 27, 2012 and January 5, 2013.  The first two . . .

letters indicated that 'In the event you are working with [BANA] on an alternative

to Foreclosure, we will not take your loan to foreclosure sale'."  (Compl. ¶ 42.)

Because Plaintiffs believed they were working with BANA to achieve a loan

modification, they believed the first two letters "may serve to prevent the sheriff's

---

[13] The Court notes that Plaintiffs' First Amended Complaint indicates that the Michigan Regulation of Debt Collection Practices Act claim is against Trott, in addition to BANA and SPS, paragraph 115 indicates that "[BANA] and SPS violated the Michigan Collection Practices Act, MCL §445.251, et seq.[]"  (Am. Compl. ¶ 115.)

16

sale[.]" (*Id.* ¶ 43.)  Despite these letters, the Property was sold at a foreclosure sale on January 30, 2013.  Plaintiffs further allege: "In a letter dated April 25, 2013 from Trott, Plaintiffs were notified that the Sheriff's foreclosure sale of Plaintiffs' property which occurred on January 30, 2013 had been Rescinded and enclosed a Copy of Affidavit Expunging Sheriff's Deed on Mortgage Sale." (*Id.* ¶ 69.)[14]

Plaintiffs do not explain how the letters above violate the FDCPA nor do they allege that the letters were false, deceptive, or otherwise unlawful.  The only fair reading of the allegations is that Trott indicated no foreclosure would occur if Plaintiffs were working with BANA to modify their loan.  However, the January 2013 letter did not contain any such information, and clearly indicated that the foreclosure sale scheduled for January 9, 2013 was being postponed until January 30 "for loss mitigation evaluation." (1/5/13 Letter, Trott Mot. Ex. L.)  The sale occurred on January 30, as indicated in the letter.

In short, Plaintiffs fail to state a viable claim against Trott under the FDCPA and the claim is therefore dismissed with prejudice.

**B.     Count VI – Intentional Infliction of Emotional Distress**

---

[14] Plaintiffs also allege that "Trott failed to provide Plaintiffs with the required foreclosure notifications [pursuant to] MCL § 600.3205a and MCL § 600.3204(4) as outlined below, and otherwise violated the Michigan foreclosure laws, as well as the [FDCPA] and the Michigan [analogue]." (Compl. ¶ 44.) These allegations, however, are entirely conclusory and are therefore not entitled to a presumption of truth.  Further, Plaintiffs did not name Trott as a defendant with respect to their claims under Michigan's foreclosure by advertisement statutes. Even if they had, Plaintiffs agreed to dismiss these claims.

Plaintiffs seek to state a claim against both BANA and Trott for intentional infliction of emotional distress.[15]  Under Michigan law, this requires Plaintiffs to show: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress.[16]  *Jones v. Muskegon Cnty.*, 625 F.3d 935, 948 (6th Cir. 2010) (applying Michigan law) (citing *Vredevelt v. GEO Group, Inc.*, 145 F. App'x 122, 135 (6th Cir. 2005)).  "Such conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'"  *Id.* (quoting *Graham v. Ford*, 237 Mich. App. 670, 674, 604 N.W.2d 713, 716 (Mich. Ct. App. 1999)).  When evaluating a claim of intentional infliction of emotional distress, courts should make a threshold determination as to "whether the defendant's conduct reasonably may be regarded as so extreme and outrageous as to permit recovery."  *Doe v. Mills*, 212 Mich. App. 73, 91, 536 N.W.2d 824, 834 (Mich. Ct. App. 1995).

---

[15] "The tort of intentional infliction of emotional distress has not been recognized by the Michigan Supreme Court. . . . Nevertheless, Michigan courts operate under the assumption that such a cause of action does exist." *Rudley v. Bank of Am. Home Loans Servicing LP*, No. 1:11-CV-1374, 2013 U.S. Dist. LEXIS 76406, at *15 (W.D. Mich. May 31, 2013) (Bell, J.) (internal quotations omitted).

[16] In setting forth the elements for this claim in response to BANA's motion, Plaintiffs provide "To establish a claim for intentional infliction of emotional distress, the Reeds must allege . . . ."  The Court is not entirely certain who the Reeds are or why they are relevant when it is the Dahls who are seeking recovery in this action, but the Court suspects the Response might be a cut-and-paste job.

There are no facts alleged in Plaintiffs' Complaint suggesting any extreme or outrageous conduct on the part of either BANA or Trott.  The crux of Plaintiffs' claim appears to be that BANA used improper means to frustrate and prevent the successful completion of a loan modification and that Trott participated in the allegedly wrongful foreclosure of their home.  However, "[i]n Michigan, [the extreme and outrageous] standard is not satisfied when the plaintiff essentially claims that the defendant breached contracts with him in various ways and foreclosed on his property."  *Lyons v. Trott & Trott*, 905 F. Supp. 2d 768, 774 (E.D. Mich. 2012) (quoting *Cingolani v. BAC Home Loans Servicing, L.P.*, No. 11-15159, 2012 U.S. Dist. LEXIS 103491, at *18 (E.D. Mich. July 25, 2012) (Duggan, J.)).  "Moreover, actions taken to foreclose on a mortgage generally do not rise to the level of extreme and outrageous conduct."  *Robbins v. Mortgage Elec. Registration Sys., Inc.*, No. 1:09-CV-295, 2009 U.S. Dist. LEXIS 104101, at *22-23 (W.D. Mich. Nov. 9, 2009) (Bell, J.) (citing *Usery v. Option One Mortgage Corp.*, No. 271560, 2007 Mich. App. LEXIS 1861, at *47-48 (Mich. Ct. App. July 31, 2007) ("Here, the essence of Ursery's argument is that Option One breached contracts with him in various ways and foreclosed on his property.  This type of activity does not rise to the level of conduct necessary to satisfy the standard [for extreme and outrageous conduct] in Michigan case law.")).

19

The Court concludes that Plaintiffs have failed to state a viable claim of intentional infliction of emotional distress against either BANA or Trott. Accordingly, the Court dismisses Count VI against BANA and Trott with prejudice.

## C.    Count VIII – Fraud/Misrepresentation

In Count VIII, Plaintiffs allege that BANA "repeatedly made representations and/or omissions to Plaintiffs regarding the nature of the mortgage, and the status of the loan modification[.]  (Compl. ¶ 134.)  Plaintiffs further allege that BANA reassured Plaintiffs that a loan modification would be forthcoming "while simultaneously planning and executing the sheriff's sale[,]" a practice "referred to as 'dual-tracking[,]' [which] is fraudulent and illegal."[17]  (*Id.* ¶ 138.)

In order to state a *prima facie* claim of fraud under Michigan law, "a plaintiff must establish that: (1) the defendant made a material representation; (2) the representation was false; (3) when the representation was made, the defendant knew that it was false, or made it recklessly, without knowledge of its truth, and as a positive assertion; (4) the defendant made it with the intention that the plaintiff

---

[17] "Dual tracking refers to a common tactic by banks that institute foreclosure proceedings at the same time that a borrower in default seeks a loan modification." *Kloss v. RBS Citizens, N.A.*, 996 F. Supp. 2d 574, 585 (E.D. Mich. 2014) (citing *Jolley v. Chase Home Fin., L.L.C.*, 213 Cal. App. 4th 872, 153 Cal. Rptr. 3d 546 (Cal. Ct. App. 2013) (discussing dual tracking under California law)). "The result is that the borrower does not know where he or she stands, and by the time foreclosure becomes the lender's clear choice, it is too late for the borrower to find options to avoid it." *Id.* (quoting *Jolley*, 153 Cal. Rptr. at 572).

should act upon it; (5) the plaintiff acted in reliance upon the representation; and (6) the plaintiff thereby suffered injury." *Roberts v. Saffell*, 280 Mich. App. 397, 403, 760 N.W.2d 715, 719 (2008).

Beyond containing each of the aforementioned elements, claims of fraudulent conduct must adhere to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." This rule requires a plaintiff: "(1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead where and when the statements were made; and (4) to explain what made the statements fraudulent." *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) (citation omitted); *see also Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) ("As a sister circuit has phrased it," Rule 9(b) requires a plaintiff to "specify the 'who, what, when, where, and how' of the alleged fraud.") (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

BANA seeks dismissal of this count on the basis that "Plaintiffs have failed to allege the time, place, and content of the alleged misrepresentations on which they relied; the fraudulent scheme; the fraudulent intent of BANA; and the injury resulting from the fraud." (BANA's Br. 15.)  The Court disagrees.  Plaintiffs'

21

Complaint is replete with details, dates, names, actions, and allegations of misrepresentations regarding whether Plaintiffs were being considered for a loan modification, the status of the modification, and whether the Property would be sold at a foreclosure sale.  The Complaint also details how BANA reversed course after foreclosing on the Property, expunging the deed issued at the sheriff's sale, due to an agreement to modify the terms of Plaintiffs' Mortgage.  (Compl. ¶ 69.) Plaintiffs allege a fraudulent scheme with respect to dual tracking and, although Plaintiffs have not specifically alleged BANA's fraudulent intent, Federal Rule of Civil Procedure 9(b) expressly permits "intent[] . . . and other conditions of a person's mind" to "be alleged generally."  Lastly, Plaintiffs have adequately alleged an injury as the result of the misrepresentations, such as "emotional distress and monetary damages," the latter of which included "late fees, interest and attorney fees."  (Compl. ¶ 139.)  For purposes of the present motion, the Court is required to accept these allegations as true.  Because motions to dismiss pursuant to Rule 12(b)(6) test a plaintiff's cause of action as stated in the complaint, not the veracity of those allegations and not the underlying merits of the cause of action, *Flanory v. Bonn*, 604 F.3d 249, 252 (6th Cir. 2010), the Court concludes that Plaintiffs' allegations of fraud are sufficient to state a claim upon which relief can be granted.

Accordingly, the Court denies BANA's Motion with respect to Count VIII.

22

## IV.    CONCLUSION AND ORDER

For the reasons set forth herein, the Court concludes that BANA is entitled to dismissal of Plaintiffs' intentional infliction of emotional distress count (Count VI) and the Court therefore **GRANTS** BANA's Motion on this claim.  However, Plaintiffs have adequately alleged the following causes of action against BANA: violation of the Michigan Regulation of Collection Practices Act (Count IV); violation of the FDCPA (Count V); and fraud (Count VIII).  Accordingly, the Court **DENIES** BANA's Motion with respect to these three counts.

The Court further concludes that Plaintiffs have failed to state any viable claims against Trott and that these claims must be **DISMISSED WITH PREJUDICE**.  The Court therefore **GRANTS** Trott's Motion in its entirety and **DISMISSES** Trott from this action.

**IT IS SO ORDERED.**


Dated: November 26, 2014

                                    s/PATRICK J. DUGGAN
                                    UNITED STATES DISTRICT JUDGE


Copies to:

**Adam S. Alexander, Esq.**
**Andrew R. Mikos, Esq.**
**Amy Sabbota Gottlieb, Esq.**
**Richard Welke, Esq.**

23